**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES E. ROSE, JR.,     **Plaintiff** | **No. 3:07cv1305** |
| **v.** | **(Judge Munley)** |
| MAHONING TOWNSHIP, MAHONING TOWNSHIP POLICE DEPARTMENT, CARBON COUNTY, OFFICER AUDIE M. MERTZ, POLICE CHIEF MARK ZENKO, JEAN A. ENGLER, BRUCE L. KEIPER, CHARLES R. EIDEM, DAWN L. BLOCKER, PATRICIA SNYDER, GEORGE STAWNYCZYJ, OFFICER KEITH R. GEHRING, OFFICER MATTHEW ARNER, OFFICER FRANK BUANAIUTO, RALPH FAHRINGER and JESSICA FAHRINGER,     **Defendants** | |

## <u>MEMORANDUM</u>

_____Before the court for disposition are motions to dismiss filed by various defendants in this case involving claims of civil rights violations. The motions have been briefed and are ripe for disposition.

**Background[1]**

Plaintiff James E. Rose, Jr., is an adult African-American who resides in Allentown, Pennsylvania.  (Doc. 1, Complaint ¶ 1).  On Friday, November 17, 2006, plaintiff purchased three (3) Rottweiler puppies from Defendants Ralph and Jessica Fahringer at their home in Lehighton, Pennsylvania. (Id. at ¶ 25).  When he arrived home, plaintiff realized that the puppies he had were smaller than the puppies he had selected at the Fahringers.  (Id.

---

[1]We have derived the background facts from the plaintiff's complaint. We accept them as true for purposes of the motion to dismiss as we must. However, we make no determination as to the ultimate veracity of the complaint's allegations.

at ¶ 30).  He concluded that he was the victim of a bait-and-switch perpetrated due to racism.  (Id.).  The next day, he went to the Fahringer's house with two other men, Craig Strickland and Sam Strickland, to return the puppies.  (Id. at 35-39).  Craig went to the Fahringers' door to announce that they were there to return the dogs.  (Id. at 39).  Ralph Fahringer pointed a rifle out of the doorway of the residence and told plaintiff, "Just put the dogs in the driveway and get . . . off my property."  (Id. at 40).  Fahringer cocked the gun and aimed it directly at the plaintiff.  (Id. at 41).  After leaving the dogs in the driveway, (evidently), the men backed out of the driveway and plaintiff dialed 911.  (Id. at 43).  The 911 dispatcher told plaintiff to return to the area of the Fahringer's house and wait for police to arrive.  (Id.).

Twenty seconds after the 911 call ended, Defendant Mertz arrived at the scene with officers from three other municipalities, Defendants Keith R. Gehring, Matthew Arner and Frank Buonaiuto.  (Id.  at 44).  Mertz told the other officers to search plaintiff, his companions and their vehicle while he went to speak with the Fahringers.  (Id.  at 45).   The search was conducted.  (Id.  at 45).  No weapons were found on the men, but they were detained in inclement weather outside Fahringer's house for several hours awaiting the return of Defendant Mertz.  (Id.  at 47).  Due to a bad heart, one working lung and high blood pressure, plaintiff was physically unable to stand for such a long period of time.  (Id.).  The detaining officer repeatedly told plaintiff that Officer Mertz would return soon and then plaintiff would be free to go. (Id.).

While the plaintiff and his companions were detained, Defendant Mertz and Defendant Mark Zenko, police chief of Mahoning Township,

2

conferred with Carbon County Assistant District Attorney Jean A. Engler, by telephone.  (Id.  at 53).  Engler directed Mertz to arrest plaintiff and his companions and not to arrest Fahringer.  (Id.).

Plaintiff asserts that the Fahringers were using their residence and business as a criminal enterprise to cheat and defraud the public by selling sickly and/or mentally retarded dogs.  (Id.  at 55).  In doing so, they committed the crimes of theft by deception, fraud and conspiracy to commit fraud.  Engler and Mertz became co-conspirators with the Fahringers, according to the plaintiff, in committing these crimes.   (Id.).

Plaintiff asserts that Engler exhibited racism in having him and his companions arrested without even listening to their side of the story.  (Id. at 56).  Plaintiff and his companions were taken to the Mahoning Township Police Department, and their truck was impounded.  (Id.  at 58).  Upon questioning by the police, plaintiff indicated that he believed that Fahringer would lie to the police in order to keep the $900 plaintiff had paid for the dogs.  (Id.  at 61).

Defendant Mertz charged plaintiff with Harassment, Terroristic Threats and Defiant Trespass.  (Id.  at 69). Plaintiff was taken to a magistrate who also exhibited racism and bigotry according to the plaintiff. (Id.  at 66-67).

 Eventually, plaintiff was placed in a jail cell with inadequate heat. The temperature was no more than forty-five (45) degrees and an air vent blew cold air directly onto plaintiff.  (Id.  at 73).  Plaintiff contends that the inhumane conditions and the false arrest formed a type of torture that ultimately led plaintiff to plead guilty.  (Id.  at 77).

Plaintiff's son and his attorney arrived at the jail with bail money at

3:00 a.m. (Id. at 78)   On February 1, 2007, plaintiff pled guilty to harassment, although he contends that he made no harassing actions on the day in question. (Id. at 79).  He was fined $300 and was made to pay $136 in court costs.  (Id.).  All the police officers involved are white as are the Fahringers.  (Id. at 80).  Plaintiff alleges that Mahoning Township has a practice and policy of racism and indifference to plaintiff's civil rights and liberties.  (Id. at 81, 82).

Based upon these facts, the plaintiff instituted the instant seven-count complaint.  The complaint raises the following causes of action: Count I, against Mertz and Mahoning Township Police Department for violation of civil rights under 42 U.S.C. §§ 1981, 1982 and 1983; Count II, against Mertz, Engler, Mahoning Township Police Department, Carbon County, Gehring, Arner, Buonaiuto, Ralph Fahringer and Jessica Fahringer, for conspiracy to violate civil rights under 42 U.S.C. § 1985; Count III, supervisory liability against Mahoning Township, Mahoning Township Police Department, Carbon County, Zenko, Keiper, Eidem, Blocker, Snyder, Stawnyczyj and Engler; Count IV, against Ralph and Jessica Fahringer for fraud, conversion and trespass to chattels; Count V, against Mertz, Engler, Mahoning Township Police Department, Gehring, Arner, Buonaiuto, Ralph Fahringer and Jessica Fahringer for conspiracy to commit fraud, conversion and trespass to chattels; Count VI, breach of contract against Ralph and Jessica Fahringer and Count VII, interference with contractual rights and conspiracy to commit breach of contract against Mertz, Engler, Mahoning Township Police Department, Gehring, Arner, Buonaiuto, Ralph Fahringer and Jessica Fahringer.   All the defendants have filed motions to dismiss.

4

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1983 for civil rights violations, we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We  have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

Motions to dismiss were filed by:   Carbon County and Jean Engler; Matthew Arner; Roger A. Gehring, identified in complaint as "Officer Keith R. Gehring"; Officer Frank Buonaiuto; Mahoning Township, Mahoning Township Police Department, Officer Audie M. Mertz, Police Chief Mark Zenko, Bruce L. Keiper, Charles R. Eidem, Dawn L. Blocker, Patricia Snyder and George Stawnyczyj.  We will address each motion separately.

**Standard of review**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested.  The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

**Discussion**

We will discuss the motions *in seriatim*.

**I.  Motion of Defendants Carbon County and Engler**

Defendants Carbon County and Assistant District Attorney Jean

5

Engler have filed a joint motion to dismiss.  We will discuss each defendant separately.

### A.  Carbon County

Carbon County moves to dismiss the action as against it on the basis that it cannot be held vicariously liable for the actions of an assistant district attorney, that is Defendant Engler.  In his brief in opposition to the motion to dismiss, plaintiff indicates that he withdraws his claims against Carbon County based solely on Defendant Engler's actions.  (Doc. 13, Brief in Opposition at pg. 8).  Therefore, defendant's motion will be granted to that extent.

Plaintiff indicates, however, that he has other claims against Carbon County for conspiracy to violate civil rights and supervisory liability that are not based solely upon the actions of Defendant Engler.  These claims assert that the conditions at the county prison and at the office of a county magisterial district judge were a violation of the plaintiff's rights.  Defendant Carbon County does not address these issues in its brief or motion.  Therefore, the case against it will be dismissed only to the extent that it is based upon the actions of Defendant Engler.

### B. Defendant Engler

Defendant Engler moves to dismiss the case on the basis that she is entitled to absolute immunity for her decisions to initiate and prosecute criminal cases.  We agree.

Prosecutors are subject to absolute immunity from liability for damages with regard to action taken in the quasi-judicial role of "initiating a prosecution, and presenting the State's case."  Imbler v. Pachtman, 424 U.S. 409, 431 (1976).   This immunity's purpose is to allow a prosecutor to

work without being constrained by the "consequences in terms of his own potential liability in a suit for damages."  Id. at 424-25.   Stated differently, absolute immunity applies to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State[.] "  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  In the instant case, plaintiff complains about Defendant Engler's direction to the police to arrest and charge him.  These actions were taken as part of an initiation and prosecution of a case. Therefore, Defendant Engler is absolutely immune from suit.

Plaintiff asserts that he is not suing Defendant Engler in her official capacity but in her personal capacity, asserting that she personally discriminated against him when she ordered that he be arrested.  We find no merit to the defendant's argument.  Regardless of the capacity in which plaintiff sues here, Defendant Engler's actions are protected by **ABSOLUTE** immunity when she acts to initiate or prosecute a criminal case.  In the instant case, it cannot be argued that she was not acting to initiate/prosecute a criminal case, regardless of her motives.  Absolute immunity applies even if she acted without good faith belief that plaintiff engaged in any wrongdoing.  Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992).  "Harm to a falsely-accused defendant is remedied by safeguards built into the judicial system-probable cause hearings, dismissal of the charges- and into the state codes of professional responsibility."  Id.  Accordingly, Defendant Engler will be dismissed from the instant case.

**II.  Motion of Defendants Mahoning Township, Mahoning Township Police Department, Officer Audie M. Mertz, Police Chief Mark Zenko,**

**Bruce L. Keiper, Charles E. Eidem, Dawn L. Blocker, Patricia Snyder and George Stawnyczyj**

We will next discuss the motion to dismiss pursuant to Rule 12(b)(6) filed by Defendants Mahoning Township, Mahoning Township Police Department, Officer Audie M. Mertz, Police Chief Mark Zenko, Bruce L. Keiper, Charles E. Eidem, Dawn L. Blocker, Patricia Snyder and George Stawnyczyj, (hereinafter the "Mahoning Defendants."). These defendants raise various issues that we will address separately.

### A.  Claims against Mahoning Township Police Department

First, the Mahoning Defendants argue that the claims against the Mahoning Township Police Department must be dismissed because a municipality and its police department are treated as a single entity for purposes of section 1983 liability.  Plaintiff agrees that all claims made in the complaint against the police department should be claims against Mahoning Township.  (Doc. 31, Pl. Oppo. Br. at 10).  Thus, this portion of the motion to dismiss will be granted and Mahoning Township Police Department will be dismissed as a party.

### B.  Individual defendants in their official capacities

The Mahoning Defendants next move for the dismissal of the individual defendants in their official capacities.  They argue that suit under section 1983 against a municipal officer in his official capacity is in actuality suit directed against the municipality that the officer represents.   We agree.  An official-capacity suit is generally merely another way of pleading an action against an entity of which an officer is an agent.   Kentucky v. Graham, 473 U.S. 159, 165 (1985).  Such a suit is properly treated as a suit against the entity.  Id. at 166.  Thus,  claims against the Mahoning

8

Township officials in their official capacities will be dismissed.

### C.  Punitive damages against the municipal defendants

The Mahoning Defendants next move for the dismissal of the punitive damages claim against the Municipal Defendants.  The law provides that punitive damages are not recoverable from municipalities in section 1983 claims.  Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Therefore, the defendants motion will be granted on this point.  The plaintiff generally agrees that punitive damages are not appropriate against the municipality, but contests dismissal of the punitive claims against the individual defendants in their official capacities.  As explained above, however, an official capacity suit is equivalent to a suit against the municipality, and the official capacity claims will be dismiss from the case. Thus, there will also be no punitive damage claim allowed against the individual defendants in their official capacities.

### D.  Rooker-Feldman

Next, the Mahoning Defendants argue that the plaintiff's claims are barred by the Rooker-Feldman doctrine. Under this doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state court judgments.  Lance v. Dennis, 546 U.S. 459, 463 (2006).  The Mahoning Defendants assert that the plaintiff is seeking damages due to his conviction.  This amounts to a collateral attack on the plea and is barred by the Rooker-Feldman Doctrine.  We disagree.

In the instant case, the plaintiff bases his § 1983 claim and his § 1985 conspiracy claim on the deprivation of the following rights:  1) right to be free from unwarranted arrest under the Fourth Amendment of the United States Constitution; 2) right to be free from unreasonable search

9

and seizure under the Fourth Amendment; 3) right to be free from cruel and unusual punishment; 4) right to be free from excessive bail under the Eighth Amendment; 5) right to freedom of speech; 6) right to be free from the deprivation of liberty without due process of law, Fourteenth Amendment; 7) right to be free from summary punishment; 8) right to be free from racial discrimination and racial profiling; and 9) right to travel.

After a review of these claims we find that some should be dismissed and others combined.  For example, to the extent that damages could be obtained by the defendant for a right to be free from excessive bail, we find that the facts set forth in the complaint do not support such a cause of action.  Hours after the bail was set, it was made and the defendant was released from jail.  As a matter of law, therefore, we find that the bail was not excessive. This claim will be dismissed.[2]  (Doc. 1, Compl. ¶ 71, ¶ 78). Additionally, plaintiff's claim of "right to be free from deprivation of liberty without due process of law" is the functional equivalent of his false arrest claim.  It will therefore, not be considered as a separate claim.  The plaintiff's "right to be free from summary punishment" is equivalent to his right to be free from cruel and unusual punishment, therefore, it too will not be considered separately.  Plaintiff's claim regarding this "right to travel" is directly related to his claim to be free from racial discrimination as he asserts he was arrested for "driving while black."  (Doc. 1, Compl. ¶ 119(j)). Therefore, this claim will not be provided a separate analysis and will be considered as covered by the racial discrimination claim.  Additionally,

---

[2]Moreover, the bail was set by the magistrate judge, not by any of the defendants.  The magistrate judge would be absolutely immune from damages for actions taken in setting bail.

plaintiff's claim for right to freedom of speech will not be provided a separate analysis.  This claim falls under his claim for false arrest.

Accordingly, the plaintiff's constitutional claims can be narrowed down to the following: 1) right to be free from unwarranted arrest; 2) right to be free from unreasonable search and seizure; 3) right to be free from racial discrimination/racial profiling and 4) right to be free from cruel and unusual punishment.  We must determine what effect, if any, plaintiff's guilty plea has on these four claims with regard to the Rooker-Feldman doctrine.

Plaintiff's first constitutional claim, right to be free from unwarranted arrest, is precluded due to his guilty plea.   The United States Supreme Court has held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" Heck v. Humphrey, 512 U.S. 477, 486-487 (1994).  The plaintiff pled guilty and that conviction has not been reversed, expunged, declared invalid or called into question; therefore, he cannot pursue a federal civil rights claim that that arrest was improper.  The plaintiff's claim involving his right to be free from unwarranted arrest will thus be dismissed.

We find the Rooker-Feldman doctrine is inapplicable to remainder of the constitutional claims.   Plaintiff's claims of constitutional violation of racial discrimination/ racial profiling, is not the equivalent to an appeal of a

11

final state court judgment.   In order to prevail on an equal protection claim in the racial profiling context, plaintiff must establish that he is a member of a protected class and similarly situated to others not within the protected class who were not prosecuted.   See Carrasca v. Pomeroy, 313 F.3d 828, 834 (3d Cir. 2002).  Thus, plaintiff does not have to establish that he was innocent of the underlying charge, or that the state court judgment was invalid, but merely that others similarly situated, but not within the protected class, were not prosecuted.   Plaintiff's complaint asserts that the Fahringers were similarly situated, that were Caucasian and that they therefore were not arrested.

Likewise, the plaintiff's claim of an unreasonable search and seizure survive his state-court guilty plea.   A defendant's guilt on charges against him is "simply irrelevant to the legality of the search under the fourth amendment or to [his] right to compensation from state officials under section 1983."   Haring v. Prosise, 462 U.S. 306, 316 (1983).

Additionally, the fact that defendant pled guilty to a charge does not justify or excuse any cruel and unusual punishment inflicted upon him. Thus, we find that the plaintiff's constitutional claims of unreasonable search and seizure and cruel and unusual punishment survive his guilty plea and will not be dismissed. [3]

Accordingly, the plaintiff has the following three section 1983 claims

---

[3]Besides asserting that the constitutional claims were prohibited by Heck or the Rooker-Feldman Doctrine, the parties did not provide a comprehensive analysis of the plaintiff's constitutional claims.   We therefore will not address issues not raised by the defendants, for example, whether the facts alleged in the complaint are sufficient to support a claim of illegal search and seizure or cruel and unusual punishment.

that survive the motion to dismiss: 1) racial discrimination/profiling; 2) unreasonable search and seizure; and 3) cruel and unusual punishment.

### E.  Supervisory Liability

The Mahoning Defendants also argue that Count III,  the claim for supervisory liability, should be dismissed.   We disagree.

Under the law, a municipality cannot be liable for civil rights violations on a basis of respondeat superior.  Rather, a plaintiff must establish that the violation occurred due to the municipality's policy or custom.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978).   In the instant case, the Mahoning Defendants argue that the plaintiff has not alleged a township policy that caused the harm at issue.  We are unconvinced.  The complaint speaks of a failure to train and a failure to supervise that led to the alleged constitutional violations.  (<u>See</u> Doc. 1, Compl. ¶ 138).  At this stage of the proceeding, these allegations are sufficient to allow the case to proceed on the supervisory liability claim.

### F.  Factual support for the state law claims'

Counts V and VII assert state law claims against the Mahoning Defendants including conspiracy to commit fraud, conversion and trespass to chattel as well as interference with contractual rights and conspiracy to commit breach of contract.  Defendants argue, and we agree, that the complaint fails to set forth these claims properly.

All of these claims relate to plaintiff's assertion that he was trying to return the puppies to the Fahringers, and the various governmental officials somehow interfered with that.  These claims will be dismissed.  The civil matter of plaintiff attempting to return the dogs is separate from the criminal matter giving rise to the alleged civil rights violations.  Nothing in

the complaint indicates that the defendants in any way prevented the plaintiff from asserting his contractual rights against the Fahringers. Count V and VII will be dismissed from this case.

### G.  Political Subdivision Tort Claims Act Immunity

The Mahoning Defendants argue that the tort claims alleged in the complaint are improper pursuant to the Pennsylvania Political Subdivision Tort Claims Act.  As the state law claims will be dismissed, this portion of the motion will be denied as moot.

### H.  Section 1985 claim

The Mahoning Defendants also move to dismiss the section 1985 conspiracy claim found in Count II of the complaint. Count II raises a cause of action under 42 U.S.C. § 1985, which provides a cause of action for conspiracy to violate civil rights.   The elements of a § 1985 cause of action are:   1) a conspiracy; 2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; 3) an act in furtherance of the conspiracy; and 4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. Lake v. Arnold, 112 F.3d 682, 685 (3d Cir.1997) (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

The Mahoning Defendants assert that plaintiff has failed to adequately assert a conspiracy claim.  We agree as to certain defendants. While the complaint does make some general broad assertions of conspiracy between the various defendants, the specific allegations simply do not support a conspiracy claim against all of the defendants.   In fact, the complaint asserts that the conspiracy took form between Defendant

Mertz and Defendant Engler and --giving the complaint a broad reading--
Police Chief Zenko, to arrest plaintiff and to become co-conspirators with
Ralph and Jessica Fahringer in the commission of the crimes of theft by
deception, fraud and conspiracy to commit fraud. (Doc. 1, Compl. ¶¶ 54-
55). According to the complaint, "[t]he officers from the other jurisdictions
merely carried out the orders of Defendant Mertz." (Doc. 1, Compl. ¶ 64).
The plaintiff proceeds to explain that in his view such carrying out of orders
is in fact a conspiracy.[4] That is not the law, however. Plaintiff has not
alleged a proper conspiracy claim against the individual Mahoning
Defendants except for Mertz and Zenko.[5]

## I. Qualified Immunity

The last issue raised by the Mahoning Defendants is qualified
immunity. Qualified immunity can serve as a defense to an individual
defendant accused of a civil rights violation. See, Hunter v. Bryant, 502
U.S. 224, 227 (1991). Qualified immunity does not apply where state
officials violate "clearly established statutory or constitutional rights of
which a reasonable person would have known." Wright v. City of

---

[4]Plaintiff's opposition brief expands on the complaint's allegations
and again illustrates that the conspiracy claim is really aimed at Mertz,
Engler and Zenko. It states: "On or about November 17, 2006, Defendant
Mertz (while acting under color of state law) did contact Defendant Engler
and Defendant Zenko. It was here that these state actors had a meeting of
the minds, and herein is where the conspiracy to violate the Plaintiff's civil
rights was given birth. . . . These Defendants did, on that evening, speak
among one another; in that, there was an evil agreement among the three
parties to carry out evil deeds." (Doc. 31, Plaintiff's Brief at 27).

[5]A claim of conspiracy is also made out against Defendant Engler.
As set forth in above, however, she is absolutely immune from suit.

Philadelphia, 409 F.3d 595, 699-600 (3d Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  For a qualified immunity analysis, therefore, the court must examine: 1) whether the officials violated a constitutional right and 2) whether that right was clearly established at the time.  Id.

In the instant case, it cannot be determined at this point whether the officials violated a constitutional right.  If they did, however, qualified immunity will not be appropriate because the rights that plaintiff advances, the right to be free from racial discrimination/profiling, to be free from cruel and unusual punishment and to be free from unreasonable search and seizure are all clearly established rights.   Thus, the qualified immunity argument will be denied at this point.

## III.  Motion of Defendant Ralph A. Gehring, improperly named as Officer Keith R. Gehring

The next motion to dismiss was filed by Defendant Ralph A. Gehring, who was improperly named in the complaint as Officer Keith R. Gehring. He is a police officer for East Penn Township.  Defendant Gehring is included in the civil rights conspiracy claim and several of the state law tort claims. Defendant Gehring moves to dismiss on several grounds that we will discuss in seriatim.

### A.  Section 1985 claim

Defendant Gehring first claims that the plaintiff's section 1985 claim should be dismissed for failure to allege a sufficient factual basis.  As set forth above, with regard to the Mahoning Defendants, a section 1985 claim has not been properly pled against Defendant Gehring and dismissal of this count as against him is appropriate.

### B.  Qualified immunity

Next, Defendant Gehring argues that he is entitled to qualified immunity for the actions he took on the day in question.  As we will grant the motion to dismiss with regard to the civil rights conspiracy claim, Defendant Gehring's qualified immunity claim is moot.

### C.  Facts sufficient to support state law tort claims

Defendant Gehring also argues that the facts alleged in the complaint are insufficient to support the state law tort claims.  We agree as set forth above with regard to the Mahoning Defendants and these counts will be dismissed.

### D.  Political Subdivision Tort Claims Act Immunity

Defendant Gehring next argues that he is entitled to immunity on the plaintiff's state law tort claims pursuant to the Political Tort Claims Act. We need not discuss this argument as the tort claims against this defendant will be dismissed.

### E.  Rooker-Feldman Doctrine

Defendant Gehring also argues that the plaintiff's claims are barred by the Rooker-Feldman doctrine.  As we have found that the sole federal cause of action asserted against Defendant Gehring (Count II, conspiracy to violate civil rights), should be dismissed, we need not discuss the Rooker-Feldman Doctrine with regard to Defendant Gehring.

For these reasons, Defendant Gehring will be dismissed from this case.

## IV.  Motion to dismiss of Defendant Frank Buonaiuto

Defendant Frank Buonaiuto has also filed a motion to dismiss. The motion raises two issues that we will discuss separately.  Defendant

17

Buonaiuto asserts that his is protected by constitutional and state law immunity and that the plaintiff has not sufficiently pled a section 1985 action.  As we have discussed above, the section 1985 claim will be dismissed as to Defendant Buonaiuto as will the state law claims.   His other arguments are, therefore, moot.  Defendant Buonaiuto will be dismissed from this action.

**v.  Motion to dismiss of Defendant Matthew Arner**

Defendant Matthew Arner has also filed a motion to dismiss. Defendant Arner raises issues regarding whether sufficient facts have been alleged to support the section 1985 claim and the state law claims and whether the civil rights claims are barred by Heck v. Humphrey.  We have discussed these issues above with regard to the Mahoning Defendants and will dismiss Defendant Arner for the reasons explained above.

Defendant Arner also briefs issues regarding any claim that the plaintiff may have against the town of Lehighton.   Plaintiff's complaint does not list Lehighton as a defendant and he indicates in his brief that he does not seek to proceed against Lehighton.  Thus, these arguments will be denied as moot.

**Conclusion**

Based upon the analysis set forth above, the motions to dismiss will be granted in part and denied in part such that the sole remaining defendants will be Mahoning Township, the township officials, Carbon County, Officer Audie M. Mertz in his individual capacity and Police Chief Mark Zenko in his individual capacity.   The Fahringers, who did not file a motion to dismiss, will also remain in the case.   An appropriate order

follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES E. ROSE, JR.,** | : **No. 3:07cv1305** |
| **Plaintiff** | : |
| | : **(Judge Munley)** |
| **v.** | : |
| | : |
| **MAHONING TOWNSHIP, MAHONING TOWNSHIP POLICE DEPARTMENT, CARBON COUNTY, OFFICER AUDIE M. MERTZ, POLICE CHIEF MARK ZENKO, JEAN A. ENGLER, BRUCE L. KEIPER, CHARLES R. EIDEM, DAWN L. BLOCKER, PATRICIA SNYDER, GEORGE STAWNYCZYJ, OFFICER KEITH R. GEHRING, OFFICER MATTHEW ARNER, OFFICER FRANK BUANAIUTO, RALPH FAHRINGER and JESSICA FAHRINGER,** | : : : : : : : : : : : : : |
| **Defendants** | : |

**ORDER**

_____**AND NOW**, to wit, this 31ˢᵗ day of March 2008, the motions to dismiss (Docs. 7, 12, 24, 25, and 28) are **GRANTED** in part and **DENIED** in part as follows:

1) Defendant Carbon County is **DISMISSED** with respect to any vicarious liability claims upon Defendant Engler's actions.  Carbon County is not dismissed in all other respects.

2) Defendants Engler, Gehring, Buanaiuto, Arner are **DISMISSED** from the instant case;

3) The remaining individual defendants are **DISMISSED** to the extent that they are sued in their official capacities;

4) Defendant Mahoning Township Police Department is **DISMISSED** as a party;

5) The punitive damages claim against the municipal defendants is **DISMISSED**; and

6) Count V and Count VII of the complaint are **DISMISSED**.

20

BY THE COURT:

s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court